MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
MIGUEL GARCIA and MIGUEL CANO VENEGA,
*individually and on behalf of others similarly situated,*

<table>
<tr><td style="text-align:center">*Plaintiffs*,</td><td style="text-align:center">**AMENDED COMPLAINT**</td></tr>
<tr><td style="text-align:center">-against-</td><td style="text-align:center">**COLLECTIVE ACTION UNDER**<br>**29 U.S.C. § 216(b)**</td></tr>
<tr><td>BURRATA BASIL PIZZA INC. (D/B/A BURRATA<br>BASIL PIZZA), IBRAHIM KHALF (AKA KHALF<br>IBRAHIM), and EMAD YOUSSEF,</td><td style="text-align:center">**ECF Case**</td></tr>
<tr><td style="text-align:center">*Defendants.*</td><td></td></tr>
</table>

-------------------------------------------------------X

Plaintiffs Miguel Garcia and Miguel Cano Venega, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Burrata Basil Pizza Inc. (d/b/a Burrata Basil Pizza), ("Defendant Corporation"), Ibrahim Khalf (aka Khalf Ibrahim) and Emad Youssef, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

<u>**NATURE OF ACTION**</u>

1.      Plaintiffs are former employees of Defendants Burrata Basil Pizza Inc. (d/b/a Burrata Basil Pizza), Ibrahim Khalf (aka Khalf Ibrahim), and Emad Youssef.

2.      Defendants own, operate, or control a pizzeria, located at 221 Avenue A, New York, NY 10009, under the name "Burrata Basil Pizza".

3.      Upon information and belief, individual Defendants Ibrahim Khalf (aka Khalf Ibrahim), and Emad Youssef, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the pizzeria as a joint or unified enterprise.

4.      Plaintiffs were employed as counter workers, cashiers, pizza makers, food preparers, dishwashers, porters, and/or delivery workers at the pizzeria located at 221 Avenue A, New York, NY 10009.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

8.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

10.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of

1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

11.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a pizzeria located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

14.    Plaintiff Miguel Garcia ("Plaintiff Garcia" or "Mr. Garcia") is an adult individual residing in Bronx County, New York.

15.    Plaintiff Garcia was employed by Defendants at Burrata Basil Pizza from approximately January 10, 2023, until on or about August 14, 2023.

16.    Plaintiff Miguel Cano Venega ("Plaintiff Cano" or "Mr. Cano") is an adult individual residing in Bronx County, New York.

17.    Plaintiff Cano was employed by Defendants at Burrata Basil Pizza from approximately February 13, 2022, until on or about March 28, 2024.

*Defendants*

18.    At all relevant times, Defendants owned, operated, or controlled a pizzeria, located at 221 Avenue A, New York, NY 10009, under the name "Burrata Basil Pizza".

19.    Upon information and belief, Burrata Basil Pizza Inc. (d/b/a Burrata Basil Pizza) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 221 Avenue A, New York, NY 10009.

20.    Defendant Ibrahim Khalf (aka Khalf Ibrahim) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ibrahim Khalf (aka Khalf Ibrahim) is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Ibrahim Khalf (aka Khalf Ibrahim) possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

21.    Defendant Emad Youssef is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Emad Youssef is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Emad Youssef possesses operational control over Defendant Corporation, an ownership interest in Defendant

Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

22.    Defendants operate a pizzeria located in in the Bronx.

23.    Individual Defendants, Ibrahim Khalf (aka Khalf Ibrahim) and Emad Youssef, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

24.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

25.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

26.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

27.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

28.    Upon information and belief, Individual Defendants Ibrahim Khalf (aka Khalf Ibrahim) and Emad Youssef operate Defendant Corporation as either an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f) intermingling assets and debts of their own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

29.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

30.     In each year from 2022 to 2023, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

31.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the pizzeria on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

32.    Plaintiffs are former employees of Defendants who were employed as counter workers, cashiers, pizza makers, food preparers, dishwashers, porters, and/or delivery workers.

33.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Miguel Garcia*

34.    Plaintiff Garcia was employed by Defendants from approximately January 10, 2023, until on or about August 14, 2023.

35.    Defendants employed Plaintiff Garcia as a counter worker, cashier and pizza maker.

36.    Plaintiff Garcia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

37.    Plaintiff Garcia's work duties required neither discretion nor independent judgment.

38.    Throughout his employment with Defendants, Plaintiff Garcia regularly worked in excess of 40 hours per week.

39.    From approximately January 10, 2023, until on or about June 18, 2023, Plaintiff Garcia worked 5-6 days per week, for an average of approximately 55.3 hours per week.

40.    During this time period, approximately 2 days each week, Plaintiff Garcia worked over 10 hours per shift,

41.    From approximately June 19, 2023, until on or about August 13, 2023, Plaintiff Garcia worked 2-5 days per week, for an average of approximately 30.5 hours per week.

42.     During this time period, approximately 1 day per week, Plaintiff Garcia worked over 10 hours per shift.

43.     Throughout his employment, Defendants paid Plaintiff Garcia his wages in cash.

44.     From approximately January 10, 2023, until on or about August 14, 2023, Defendants paid Plaintiff Garcia $20.00 per hour.

45.     For approximately 2 weeks (68 hours of work), Defendants did not pay Plaintiff Garcia any wages for his work.

46.     Defendants never granted Plaintiff Garcia any breaks or meal periods of any kind.

47.     Plaintiff Garcia was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

48.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL.

49.     Defendants did not provide Plaintiff Garcia an accurate statement of wages, as required by NYLL 195(3).

50.     Defendants did not give any notice to Plaintiff Garcia of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

51.     As a result of Defendants' failure to provide Plaintiff Garcia and other employees a Notice of Pay Rate or accurate wage statements with each payment of wages, Plaintiff Garcia and other employees were prevented from: (i) comparing their rate of pay to their hours worked; (ii) realizing that they were underpaid; and (iii) advocating for themselves and/or taking appropriate action to obtain the payments due to them.

*Plaintiff Miguel Cano Venega*

52.     Plaintiff Cano was employed by Defendants from approximately February 13, 2022, until on or about March 28, 2024.

53.     Defendants employed Plaintiff Cano as a food preparer, dishwasher, porter, and delivery worker.

54.     Plaintiff Cano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

55.     Plaintiff Cano's work duties required neither discretion nor independent judgment.

56.     Throughout his employment with Defendants, Plaintiff Cano regularly worked in excess of 40 hours per week.

57.     From approximately February 13, 2023, until on or about March 24, 2024, Plaintiff Cano worked 6 days per week, for an average of approximately 72 hours per week.

58.     During this time period, Plaintiff Cano worked over 10 hours per shift, approximately 5 days per week.

59.     From approximately March 26, 2024 until on or about March 28, 2024, Plaintiff Cano worked from approximately 11:00 a.m. until on or about 10:00 p.m. 2 days, and from approximately 11:00 a.m. until on or about 11:00 p.m. one day (approximately 34 hours).

60.     Throughout his employment, Defendants paid Plaintiff Cano his wages in cash.

61.     From approximately February 13, 2022, until on or about September 2022, Defendants paid Plaintiff Cano $15 per hour.

62.     From approximately October 2022 until on or about November 13, 2022, Defendants paid Plaintiff Cano $16 per hour.

63.     From approximately November 14, 2022, until on or about March 29, 2024, Defendants paid Plaintiff Cano $17 per hour.

64.     In approximately March 2022, Plaintiff Cano worked 103 hours per week for 2 weeks, but was only paid for 90 hours of work per week.

65.     In addition, during October and November 2023 Plaintiff Cano was not paid for 2 hours of work each week.

66.     Defendants never granted Plaintiff Cano any breaks or meal periods of any kind.

67.     Plaintiff Cano was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

68.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cano regarding overtime and wages under the FLSA and NYLL.

69.     Defendants did not provide Plaintiff Cano an accurate statement of wages, as required by NYLL 195(3).

70.     Defendants did not give any notice to Plaintiff Cano, in English and in Spanish (Plaintiff Cano 's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

71.     As a result of Defendants' failure to provide Plaintiff Cano and other employees a Notice of Pay Rate or accurate wage statements with each payment of wages, Plaintiff Cano and other employees were prevented from: (i) comparing their rate of pay to their hours worked; (ii) realizing that they were underpaid; and (iii) advocating for themselves and/or taking appropriate action to obtain the payments due to them.

## RACE and/or NATIONAL ORIGIN DISCRIMINATION

72.    Defendants discriminated against Plaintiffs and Plaintiff Cano based on their race and national origin.

73.    Plaintiff Cano is of Hispanic origin and ethnicity.

74.    Upon information and belief, Defendant Emad Youssef is Egyptian.

75.    Defendant Emad Youssef regularly verbally abused Plaintiff Cano and the Plaintiffs at Burrata Basil Pizza by calling them racial slurs in Spanish that were discriminatory against them based on their race and national origin.

76.    Defendant Emad Youssef would regularly yell at Plaintiff Cano and the Plaintiffs by calling them "pendejo," which is a profane Spanish word that means female dog, with the English equivalent being the word "bitch."

77.    Defendant Emad Youssef would regularly yell and say to Plaintiff Cano and Plaintiffs in Spanish, "pinche Mexicanos,", which means "fucking Mexicans," "pinche enanos," which means "fucking midgets," and "cucarachas," which means "cockroaches," "pinche mexicanos son basura," which means "fucking Mexicans are garbage."

78.    Defendant Emad Youssef would regularly also call the Plaintiffs "wet backs," "fucking wet backs," "motherfuckers," "pieces of shits."

79.    Defendant Emad Youssef's aforementioned verbal abuse began on the first day of Plaintiff Cano's employment with Defendants, and did not stop until his last day of employment with Defendants.

80.    These verbal harassments would happen almost every weekend.

81.    Defendant Emad Youssef also physically abused Plaintiff Cano and the Plaintiffs.

82.    Between on or about March 2022 and April 2022, Defendant Emad Youssef slapped

Plaintiff Cano on his face 3 times on three separate occasions in the kitchen. During these incidents, Defendant Emad Youssef yelled at Plaintiff Cano "pendejo," and would yell at him in Spanish that Plaintiff Cano didn't know how to work.

83.     Plaintiff Cano would ask Defendant Emad Youssef to stop hitting him, whereupon Defendant Emad Youssef would reply that this was how it was done in his country.

84.     Because there wasn't that much work to be found for Plaintiff Cano due to the Covid pandemic, he needed the job and endured these horrible abuses.

85.     On or about March 2023, Defendant Emad Youssef grabbed Plaintiff Cano by the neck, and called him "you fucking stupid Mexican" in Spanish because the pizza dough would overrise because it was too hot.

86.     On December 31, 2023, Defendant Emad Youssef grabbed Plaintiff Cano's shirt, and tried to hit him, saying "aprende como hacer estoy pinche Mexicano," which is Spanish for "learn how to do this you fucking Mexican." On this day, Defendant Emad Youssef tried to hit Plaintiff Cano with a spatula, but Plaintiff Cano avoided his attack, whereupon Plaintiff Cano told Defendant Emad Youssef in Spanish, "hit me if you want, but then you are going to start a problem," whereupon Defendant Emad Youssef said in Spanish "I like having problems."

87.     On or about March 28, 2024, between 9PM and 10PM, Defendant Emad Youssef began verbally abusing Plaintiff Cano by calling him "pinche pendejo" or "pendejo"("fucking bitch" or "bitch"), saying that he wasn't doing his job. Defendant Emad Youssef raised his hand to strike Plaintiff Cano, and further threatened Plaintiff Cano by saying in sum and substance that he had a lot of money, and that he likes getting into trouble, which is something Defendant Emad Youssef would always say when he was angry at his employees.

88.     Moreover. when Defendant Emad Youssef got angry at Plaintiffs, which he

frequently did, he would throw the clean pizza pans and the clean spatulas on the ground, in order to make them clean it again.

89.    Defendant Emad Youssef pushed Plaintiff Cano against the wall on at least two occasions, one time on or about November 2023, and another time sometime between 2023 and 2024.

90.    Whenever Defendant Emad Youssef would get mad because of a customer, he would go to the back of the restaurant and grab one of the Plaintiffs and say in sum and substance in Spanish, "You bitch, you don't know how to do your work."

91.    On or about April 2023, when Plaintiff Garcia had an emergency because water was coming into his house, when Plaintiff Garcia called out of work, Defendant Emad Youssef told him "I will fucking kill you."

92.    On or about July 2023, Defendant Emad Youssef also told Plaintiff Garcia that, "all Mexicans are like cockroaches." When Plaintiff Garcia told Defendant Emad Youssef to stop making these racist comments, Defendant Emad Youssef said in sum and substance that they don't have papers, they don't have rights. Defendant Emad Youssef also said, "I don't care, I kill people."

93.    Defendant Emad Youssef would smoke a lot of marijuana in the basement of the restaurant, and he would become aggressive thereafter. Defendant Emad Youssef would say to Plaintiffs "I will fucking kill you," "I have a lot of buddies that will bury you," "Nobody can find you."

94.    Because of Defendant Emad Youssef's abusive treatment of Plaintiff Cano, Plaintiff Cano would be scared to go to work.

95.    Plaintiff Cano, not able to endure the constant barrage of verbal and physical abuse, quit his employment.

96.     Defendant Emad Youssef would also tell Plaintiff Cano and the Plaintiffs, "Si un pendejo si quiere ir que se vaya no le voy a pagar su semana," which is Spanish for "if a bitch wants to go, he can go, I'm not going to pay him for this week." By threatening to not pay Plaintiff Cano and the Plaintiffs, he deterred them for leaving their employment.

97.     Defendant Emad Youssef's constant abusive mistreatment of Plaintiff Cano and the Plaintiffs caused them serious mental and emotional distress.

98.     Plaintiff Cano and Plaintiffs were damaged in an amount to be determined at trial

*Defendants' General Employment Practices*

99.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

100.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

101.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

102.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

103.     Defendants paid Plaintiffs their wages in cash.

104.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

105.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

106.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

107.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

108.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

109.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name

of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

110.    As a result of Defendants' failure to provide Plaintiffs with a Notice of Pay Rate or accurate wage statements with each payment of wages, they were prevented from: (i) comparing their rate of pay to their hours worked; (ii) realizing that they were underpaid; and (iii) advocating for themselves and/or taking appropriate action to obtain the payments due to them.

## FLSA COLLECTIVE ACTION CLAIMS

111.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

112.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

113.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

114.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

115.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

116.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

117.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

118.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

119.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

120.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

### SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

121.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

122.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

123.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

124.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

125.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

126.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

127.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

128.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

129.     Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

130.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

131.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

132.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

133.    Plaintiffs were damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

134.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

135.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

136.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

137.    Plaintiffs were damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

138.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

139.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the

physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

140.　As a result of Defendants' failure to furnish an accurate wage notice to Plaintiffs, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

141.　Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

142.　Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

143.　With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

144.　As a result of Defendants' failure to furnish accurate statements to Plaintiffs, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

145.　Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## (DISCRIMINATION BASED ON RACE and/or NATIONAL ORIGIN IN VIOLATION

## OF SECTION 1981)

146.    Plaintiffs repeats and realleges all paragraphs above as though fully set forth herein.

147.    At all times material herein, Defendants are employers within the meaning of Section 1981.

148.    On numerous occasions, Defendants wrongfully discriminated against Plaintiffs because of their national origin and race, contrary to Section 1981.

149.    In discriminating against Plaintiffs because of their national origin and race, Defendants and their agents and employees knew and acted in deliberate disregard of Plaintiffs' lawful civil rights.

150.    As a result of Defendants' discriminatory acts, Plaintiffs have suffered and will continue to suffer substantial losses, including loss of past and future earnings and other reemployment benefits, and have suffered monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, and humiliation.

151.    The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to Plaintiffs' rights.

152.    Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## (DISCRIMINATION BASED ON NATIONAL ORIGIN AND RACE IN VIOLATION OF

## THE NEW YORK STATE HUMAN RIGHTS LAW)

153.    Plaintiffs incorporate and re-allege each preceding paragraph as though fully restated.

154.     New York State Executive Law § 296(1)(a) provides that it shall be an unlawful discriminatory practice:

> [f]or an employer . . . because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions of privileges of employment.

155.     At all times material herein, Defendants are employers within the meaning of the New York State Human Rights Law.

156.     Defendants' acts and omissions constitute national origin discrimination and retaliation in violation of the New York State Human Rights Law

157.     In violation of the New York State Human Rights Law, Defendants' acts and omissions constitute a continuing violation and ongoing policy and practice of intentional discrimination and retaliation motivated by animus towards Plaintiffs' national origin and race.

158.     Defendants' acts and omissions were related to the unlawful discrimination and retaliation within the limitation period.

159.     The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to the rights of Plaintiffs.

160.     As a direct and proximate cause of this misconduct, Plaintiffs have suffered and will continue to suffer substantial losses, including loss of past and future earnings and other benefits of employment, and has suffered other damages such as mental anguish, damage to reputation, emotional distress, and humiliation.

161.     Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## (VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW)

162.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

163.    Defendants are an employer within the meaning of the New York State Human Rights Law.

164.    Defendants wrongfully discriminated against Plaintiffs because of their national origin and race, contrary to the New York Human Rights Law, N.Y. Exec. L. § 296.

165.    In discriminating against Plaintiffs because of their national origin and race, Defendants and their agents and employees knew and acted in deliberate disregard of Plaintiffs' lawful civil rights.

166.    Plaintiffs have been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

## (DISCRIMINATION BASED ON NATIONAL ORIGIN AND RACE IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW)

167.    Plaintiffs repeat and realleges all paragraphs above as though fully set forth herein.

168.    New York City Admin. Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice (a) [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation or alienage or citizenship status of any person: (1) [t]o represent that any employment or position is not available when in fact it is available; (2) [t]o refuse to hire or employ or to bar or to discharge from employment such person; or (3) [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment.

169.     At all times material herein, Defendants are employers within the meaning of the New York City Human Rights Law.

170.     Defendants wrongfully discriminated against Plaintiffs because of their national origin and race, contrary to the New York City Human Rights Law, N.Y.C.A.C. § 8-107(1)

171.     In discriminating against Plaintiffs because of their national origin and race, Defendants and their agents and employees knew and acted in deliberate disregard of Plaintiffs' lawful civil rights.

172.     As a direct and proximate cause of Defendants' misconduct, Plaintiffs' have suffered substantial losses, including loss of past and future earnings and other benefits of employment, and has suffered other damages such as mental anguish, damage to reputation, emotional distress, and humiliation.

173.     The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to Plaintiffs' rights.

174.     Plaintiffs have been damaged in an amount to be determined at trial.


**TWELFTH CAUSE OF ACTION**

**(UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION OF THE**

**NEW YORK LABOR LAW)**

175.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

176.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

177.     New York State Labor Law § 196-d prohibits any employer or his agents,

including owner and manager, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

178.    Defendants unlawfully misappropriated a portion of Plaintiff Cano's tips that were received from customers.

179.    Defendants knowingly and intentionally retained a portion of Plaintiff Cano's tips in violations of the NYLL and supporting Department of Labor Regulations.

180.    Plaintiff Cano was damaged in an amount to be determined at trial.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)     Declaring the acts and practices complained herein violated Section 1981, the New York City Human Rights Law, and the New York State Human Rights Law;

(s)     Directing Defendants to pay Plaintiffs' compensatory and punitive damages;

(t)     Awarding reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. §2000e-5(k); 42 U.S.C. § 1988(b); New York State Executive Law § 297.10 and New York City Admin. Code §8-502(g);

(u)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(v)     All such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

June 26, 2025

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:        /s/ Robert Jun
Robert Jun
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*